███████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **FLYPSI, INC. (D/B/A FLYP),** | |
| **Plaintiff,** | **Civil Action No. 6:22-cv-31-ADA** |
| **vs.** | |
| **GOOGLE LLC,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## <u>PLAINTIFF FLYP'S RESPONSE TO GOOGLE'S MOTION TO TRANSFER</u>

## TABLE OF CONTENTS

I.   THE FACTS ............................................................................................................... 1

   A.  Flyp is a Texas-based company and has been since its inception. .................................. 1

   B.  Google witnesses and documents, and third-party witnesses are in the WDTX or
   within 100 miles of Waco. ............................................................................................. 3

II.  THE NDCA IS NOT A CLEARLY MORE CONVENIENT FORUM ........................... 5

   A.  Google's self-serving declarations should be afforded little weight. .............................. 6

   B.  The private interest factors weigh strongly against transfer. ....................................... 8

      1.  The relative ease of access to sources of proof weighs strongly against transfer. .... 8

      2.  The cost of attendance of willing witnesses weighs strongly against transfer. ......... 9

      3.  The availability of compulsory process to secure the attendance of non-party
      witnesses weighs against transfer. ................................................................................. 10

      4.  Other practical problems that make trial of a case easy, expeditious, and
      inexpensive weigh strongly against transfer. ................................................................. 11

   C.  The public interest factors weigh against transfer. ..................................................... 13

      1.  The administrative difficulties flowing from court congestion weigh against
      transfer. ......................................................................................................................... 13

      2.  The local interest weighs against transfer. .................................................................. 13

      3.  The remaining public interest factors are neutral. ..................................................... 15

III. CONCLUSION ......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple Inc.*,
    No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022)...................................................14

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ...................................................................................................15

*In re Dish Network L.L.C.*,
    No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)....................................................10

*In re EMC Corp.*,
    501 F. App'x 973 (Fed. Cir. 2013) ..........................................................................................12

*Fintiv Inc. v. Apple Inc.*,
    No. 6:18-CV-00372, 2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) ......................................8

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)...........................................................................................9, 13

*Good Kaisha IP Bridge 1 v. Broadcom Ltd.*,
    No. 2:16-CV-0134-JRGRSP, 2017 WL 750290 (E.D. Tex. Feb. 27, 2017) ...........................11

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)..................................................................................................................13

*Monterey Rsch., LLC v. Broadcom Corp.*,
    No. W-21-CV- 00542-ADA, 2022 WL 526242 (W.D. Tex. Feb. 21, 2022)....................6, 7, 8

*Motion Offense, LLC v. Google LLC*,
    Case No. 6:21-cv-514, Dkt. 79 (W.D. Tex. Oct. 4, 2022) .......................................................13

*N5 Techs., LLC v. Bank of Am., N.A.*,
    No. 2:12- CV-685-MHS-RSP, 2014 WL 558762 (E.D. Tex. Feb. 10, 2014) .........................11

*Parkervision, Inc. v. Intel Corp.*,
    No. 6:20-CV-00108, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ........................................13

*Parus Holdings Inc. v. LG Elecs. Inc.*,
    No. 6:19-CV-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020)...........................10

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
    No. 6:11-cv-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ............................................12

*In re Radmax*,
    720 F.3d 285 (5th Cir. 2013) ................................................................8

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021) ............................................................14

*TQP Dev., LLC v. LinkedIn Corp.*,
    No. 2:12-CV-191-JRG-RSP, 2013 WL 12247813 (E.D. Tex. Mar. 28, 2013) ......................11

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ..............................................................10

*WSOU Invs. LLC v. Arista Networks, Inc.*,
    No. W-20-CV-01083-ADA, 2021 WL 6015526 (W.D. Tex. Nov. 5, 2021) ........................11

## TABLE OF EXHIBITS[1]

| No. | Brief Description |
|---|---|
| 1 | Declaration of ███████████████ (SEALED) |
| 2 | Flyp's Notice of Venue-Related Rule 30(b)(6) Deposition of Google LLC (SEALED) |
| 3 | Deposition of Mr. ███████ – Google Corporate Representative on Venue Topics (SEALED) |
| 4 | U.S. Patent No. 9,667,770 |
| 5 | U.S. Patent No. 10,051,105 |
| 6 | U.S. Patent No. 10,334,094 |
| 7 | U.S. Patent No. 11,012,554 |
| 8 | U.S. Patent No. 11,218,585 |
| 9 | NBC 5 Dallas-Fort Worth, "Denton Startup's 'Flyp' App Approaches Two Million Downloads" |
| 10 | Rick Pixler – LinkedIn Profile |
| 11 | Murray Kawchuk – LinkedIn Profile |
| 12 | Distance between Waco and Bedford (Driving and Straight Line) |
| 13 | Distance between Waco and Dallas (Driving and Straight Line) |
| 14 | Flyp's Responses and Objections to Google LLC's Venue-Related Interrogatories (SEALED) |
| 15 | ███████ – LinkedIn Profile |
| 16 | GOOG-FLYP-00000074 (SEALED) |
| 17 | GOOG-FLYP-00000562 (SEALED) |
| 18 | GOOG-FLYP-00000637 (SEALED) |
| 19 | GOOG-FLYP-00000763 (SEALED) |

---

[1] The undersigned hereby states that true and correct copies of the exhibits noted here are attached to this Response.

| No. | Brief Description |
|-----|-------------------|
| 20 | GOOG-FLYP-00000987 (SEALED) |
| 21 | GOOG-FLYP-00000991 (SEALED) |
| 22 | GOOG-FLYP-00001003 (SEALED) |
| 23 | GOOG-FLYP-00001036 (SEALED) |
| 24 | GOOG-FLYP-00001060 (SEALED) |
| 25 | GOOG-FLYP-00001143 (SEALED) |
| 26 | GOOG-FLYP-00001169 (SEALED) |
| 27 | GOOG-FLYP-00001235 (SEALED) |
| 28 | GOOG-FLYP-00001238 (SEALED) |
| 29 | GOOG-FLYP-00001241 (SEALED) |
| 30 | GOOG-FLYP-00001244 (SEALED) |
| 31 | GOOG-FLYP-00001249 (SEALED) |
| 32 | GOOG-FLYP-00001252 (SEALED) |
| 33 | GOOG-FLYP-00001271 (SEALED) |
| 34 | GOOG-FLYP-00001301 (SEALED) |
| 35 | GOOG-FLYP-00001350 (SEALED) |
| 36 | Google's Supplemental Objections and Responses to Flyp's Venue-Related Requests for Production (SEALED) |
| 37 | Third Parties Responsive to Request for Production No. 6 (SEALED) |
| 38 | Distance between Waco and Midlothian (Driving and Straight Line) |
| 39 | Dallas Morning News, "Google's massive $600M data center takes shape in Ellis County as tech giant ups Texas presence." |
| 40 | Google in Texas Report (linked at g.co/economicimpact/Texas) |
| 41 | 2022-09-04 Email between counsel on venue discovery (SEALED) |

| No. | Brief Description |
|-----|------------------|
| 42 | Google's Supplemental Objections and Responses to Flyp's Venue-Related Interrogatories (SEALED) |
| 43 | Google Data Centers, Locations (https://www.google.com/about/datacenters/locations/) |
| 44 | ██████ Declaration in *Purdue Rsch. Foundation v. Google LLC* (SEALED) |
| 45 | Distance between Dallas and San Francisco (Driving and Straight Line) |
| 46 | ██████ – LinkedIn Profile |
| 47 | ██████ – LinkedIn Profile |
| 48 | LegalMetric District Report, Texas Western District Court in Patent Cases, August 2017–August 2022 |
| 49 | LegalMetric District Report, California Northern District Court in Patent Cases, August 2017–August 2022 |

Google's Motion to transfer this case to the Northern District of California (Dkt. 42) should be denied. First, it rests on the false premise that Flyp is a "Boston-based company." Google is wrong. Flyp was conceived and launched in Dallas and has been based in Texas since its inception. Flyp closed its satellite Boston office years before it filed this suit. The great majority of Flyp's relevant witnesses, and all of its documents, are within 100 miles of the Waco courthouse. Flyp has no employees or documents in the NDCA, or any connection at all to that venue (or to Boston).

Second, venue discovery and Google's own documents have revealed ███████████████ ████████████████████████████████████████████████████ ████████████████████████. The Court should reject Google's efforts to downplay their significance. Third, Google's evidence for transfer consists largely of unsupported boilerplate assertions by declarants who failed to perform any real investigation of the facts. As a result, Google has offered no proof as to the location of its relevant documents.

These facts, taken together with Google's delay in bringing its Motion, considerations of judicial efficiency, the faster time to disposition in this Court, and Waco's local interest in deciding this matter, demonstrate that Google cannot satisfy its elevated burden to clearly demonstrate that the NDCA is clearly more convenient. Rather, this case is properly in the WDTX and should remain here.

## I.    THE FACTS

### A.    Flyp is a Texas-based company and has been since its inception.

Flyp has been a Texas company since it was founded in 2013. (Ex. 1 ¶¶ 5–6). Google's mischaracterization of Flyp as a "Boston-based company" rests on a stale social media profile that Flyp has not updated in over six years and ignores all other facts on record. (*Id.* ¶¶ 16–23). First, the Complaint identifies Flyp's principal place of business as 2040 Bedford Road, Suite 100, ***Bedford, Texas*** 76021. (Dkts. 1, 50). Second, every single one of the five Asserted Patents

███████████████████

identifies Flyp of **_Denton or Bedford, Texas_** as the applicant and assignee (Exs. 4–8). Flyp's first

Texas office was in Addison, Texas. (Ex. 1 ¶ 7). Between late 2014 and early 2017, Flyp also

maintained an office in Boston. (_Id._ ¶ 8). That Boston office, however, closed in 2017, long before

this suit was filed. (_Id._ ¶¶ 9–10). Upon its closure, all documents in Boston were moved to Texas.

(_Id._). Aside from one antiquated reference on an old LinkedIn page, Flyp has had no connection

to Boston since that closure five years ago. (_Id._ ¶ 16).

 Eventually, Flyp moved its office from Addison to Denton, Texas and from 2017 to 2019

maintained a single office in Denton. (_Id._ ¶ 12). In November 2017, Flyp was highlighted by

DFW's NBC 5 as its commercial application approached two million downloads.[2] In 2019, Flyp

closed its Denton office and relocated to Bedford, Texas, where it maintains its principal place of

business to this day. (_Id._ 1 ¶¶ 13–14). In 2021, Flyp opened a second office in downtown Dallas.

(_Id._ ¶ 15). Both of Flyp's current offices in Bedford and Dallas are within 100 miles of Waco—

89 miles and 87 miles, respectively. (_Id._ ¶¶ 38–39; _see also_ Ex. 12, 13).

 Flyp currently has 10 employees at its Bedford and Dallas offices, including ███████

███████████████████████████████████████████████████████

████████████████.[3] (_Id._ 1 ¶¶ 24–28; _see also_ Ex. 14). All of Flyp's documents and

---

[2] Ex. 9 ("Denton Startup 'Flyp' App Approaches Two Million Downloads."). Both persons identified in the article, Rick Pixler and Murray Kawchuk, are no longer associated with Flyp and are potential non-party witnesses within or nearly within 100 miles of the Waco courthouse. (Exs. 10, 11).

[3] Ivan Zhidov and Sunir Kochhar, the other inventors on the Asserted Patents, are ████████ █████. Mr. Zhidov is in Chickasha, Oklahoma, and Mr. Kochhar is in Tucson, Arizona— neither of which is in either venue. (Ex. 4). Google also identifies two other potential Flyp witnesses, Bob Cleaves and Jeff Stark, both located in Hawaii. (Mot. at 2). ████████████ ██████████████████████████. (Ex. 1 ¶ 32). Jeff████████████████ ████████████████████████████ (_Id._ ¶ 33). Neither Mr. Cleaves nor Mr. Stark is in either venue, and both would spend substantial time and incur significant expense in order to travel, regardless.

evidence about the conception and reduction to practice of its invention, the development and operation of its commercial application, the advertising and marketing of its application, and its finances are in those offices. (*Id.* ¶¶ 34–35). Flyp has no connection to the NDCA. (*Id.* ¶ 43).

**B.    Google witnesses and documents, and third-party witnesses are in the WDTX or within 100 miles of Waco.**

While Google's Motion emphasizes the overall size of its presence in the NDCA compared to its presence in the WDTX (Mot. at 3), Google ignores or downplays key witnesses, documents, and third-party witnesses in the WDTX or within 100 miles of Waco.



At least one former employee ███████████████████████████████████

███. (Dkt. 42-2 at 4; *see* Ex. 15).[4] In deposition, Google identified that ██████████

████████████████████████████████. (Ex. 3 at 73:19–75:15). Because Mr. ███ is ██

████████████████████████████████████████████████████████████.

Google's technical declaration also names █████████████████████████████

████████████████████████████. (Dkt. 42-2, ¶¶ 9–10). Google tries to ████████

█████████████████████████████████████████████████████████████████

██████████████████████. (*See id.*). This argument fails for two reasons. First, the purported

division ██████████████████████████████████████████████████. Google's

corporate deponent confirmed that ██████████████████████████████████████

█████████████████████. (Ex. 3 at 52:18–53:18). Although other Google products ███████

█████████████████████████████████████████. (*Id.* at 53:12–56:25). That

---

[4] Google's declarant and corporate representative, Mr. ████████ tries mightily to minimize Mr. ███ by asserting that ████████████████████████████████████████████████████████ (Dkt. 42-2 at 4). But that is pure conjecture, given Mr. ████████ later admission that he had not spoken with Mr. ███ either when preparing his declaration or when preparing for his deposition. (Ex. 3 at 35:15-23). Mr. ████ also erroneously testified that ███████████████████████████████████. (*Id.* at 74:17-25). According to Mr. ███ however, he █████████████████████████████████. (Ex. 15).

█████████████

is because ██████████████████████████████████████

███████. (*Id.* at 57:1–58:10).

Second, Google's own technical documents belie ███████████████████

██████████████. Google's limited production to date is replete with ██████████████. (Exs. 16–

35). One document, ███████████████ discusses ██████████████████████████

████████ functionality at the core of Flyp's infringement assertions here. (Exs. 16–18). An internal

comment notes ████████████████████████████████████████

██████ (*Id.*) Another internal document notes that █████████████████████████████

████████████████████████████████ (Ex. 19), which includes

████████████████████████████████ (Ex. 23). In the parlance of the Asserted

Claims, such ██████████ are "bridge numbers." And multiple internal documents discussing

██████████████████████████████████████████████

████████████████████. (Exs. 27–33).

Given the close ties between ██████████████, Google's WDTX-based employees

have knowledge relevant to Flyp's case, and discovery from both will be necessary. Mr. ████████

has knowledge about ██████████████████████████████

██████████████████. (Dkt. 42-2, ¶ 9). Mr. ████████ has knowledge about ████████████

██████████████████████████████████████████

█████████████████████████████████.

Furthermore, during discovery, Google identified ████████████████████████

██████████████████████████████████████████

4



██████ (*See* Exs. 35, 36).[5] Google testified that ████████████████████ ████████████████████████████. (Ex. 3 at 34:5–35:10). Google's deponent, however, did not know ████████████████████████████████ ████████████████████████████████████████ ██████████. (*Id.*) As a result, information about ██████████████████ ████████████████████ uniquely found within the WDTX.

Finally, Google's Motion fails to mention its $600 million data center in Midlothian, Texas, which is just 65 miles from Waco (Ex. 38). Google has boasted that its first-ever Texas-based data center is one of the "engine[s] of the internet," and that if you live in Texas or the surrounding areas, your data "will likely be processed in that center." (Ex. 39). While Google acknowledged that ████████████████████████████ (Exs. 41, 42), Google has conducted no investigation to ████████████████████████████ ██████████. (Ex. 3 at 105:3-25). Notably, Google cannot dispute that ████████████ ████████████████████████████████████████ ██████████████. (*Id.* at 107:25–109:25).

## II.     THE NDCA IS NOT A CLEARLY MORE CONVENIENT FORUM

Google fails to carry its elevated burden to clearly demonstrate the transfer is clearly more convenient.[6] Google's self-serving and narrowly focused declarations are the product of minimal investigation and deserve minimal weight. The actual locations of witnesses and sources of proof in the WDTX weigh strongly against transfer, and the other private and public factors either point

---

[5] Google did not identify ████████ or ████████ as being located in either the WDTX or the NDCA. (Ex. 3 at 95:1-18, 115:23-25). Public records indicate that ████████ is ████████████████, and ████████ is ████████████. (Exs. 46, 47).
[6] As the Court is familiar with general transfer standards, Flyp will refrain from reciting them here. Flyp will discuss legal precedents specific to the parties' positions as they arise.

███████████████████

the same way or are at most neutral. Because the full record establishes that the WDTX will be a far more convenient forum for this case, transfer should be denied.

### A.    Google's self-serving declarations should be afforded little weight.

As the Court is well aware, Google has an elevated burden here to "clearly demonstrate" that the NDCA is "clearly more convenient" that the WDTX. *Monterey Rsch., LLC v. Broadcom Corp.*, No. W-21-CV- 00542-ADA, 2022 WL 526242, at *2 (W.D. Tex. Feb. 21, 2022). The lion's share of Google's support for its Motion comes from the declarations of Mr. ████ (Dkt. 42-1) and Mr. ████ (Dkt. 42-2). But these declarations deserve little weight as ████████████ ███████████████████████. (*See generally* Dkts. 42-1 and 42-2 (██ ███████████████████); *see also* Ex. 3 at 82:20-23).[7]

Furthermore, both declarants intentionally limited their investigation to ███████████ ████████████████████████████████████████████ ████. (Dkt. 42-1, ¶ 4, 42-2, ¶ 3; *see* Ex. 3 at 85:5-8 ████████████████ ████████████████████████████████████████████ ███████████████")). While this approach may capture the current location of *current* employees with relevant knowledge, it fails to capture the current location of ***former or reassigned*** employees with historical knowledge prior ████████. Mr. ████—a ███████████████████████ (*see* Dkt. 42-1; Ex. 44)—identified ██████ ████████████████████████████. ██████████

---

[7] Much of Mr. ████ declaration is simply too generic to be credible, insofar as it merely parrots past declarations (in a near cut-and-paste fashion) in stating ████████████████ ██████████████. (*Compare* Dkt. 42-1, *with* Ex. 44). Such generic allegations untethered to the facts here are unhelpful and fail to carry Google's burden. *See Monterey Rsch.*, 2022 WL 526242, at *3 (finding "general allegations unsupported by specific evidence do not tip the scales in a transfer analysis").

████████████

████████████████████████████████████. (*See* Dkt. 42-1,

¶ 7; Ex. 3 at 86:13–89:1). Even when pressed, Google's corporate witness could not provide ██

███████████████████████████████████████████████████████

█████████████████ (Ex. 3 at 86:9-11, 88:12-15). Google has thus presented ***no proof at all***

about the location of employees with historical knowledge of ████████████████████

█████ as of May 2017—the issuance date of the '770 Patent, which is also the date of first

infringement and the date of any hypothetical negotiation under *Georgia-Pacific.*

Google's technical declaration from Mr. █████ is likewise neither credible nor helpful to

the Court's analysis. Mr. █████ focuses only on ████████████████████████

████████████████████████████. Indeed, limited venue discovery has

already unearthed ████████████████████████████████████

██████████████████████████. (*See* Ex. 36 at 6–7;

Ex. 3 at 38:16–41:21). Mr. █████ also arbitrarily limited the scope of his investigation to █████

████████████████████ (Dkt. 42-2, ¶ 2), using this ████████████████

██████████████████████████. (*Id.*, ¶¶ 9–10). Mr. █████ self-serving

███████ however, is not ████████████████████████████████

████████████████████████████. (Ex. 3 at 63:23–

65:11). As discussed above, Google's document production establishes ████████████████

████████████████████████████████████████.

Both Mr. █████ and Mr. █████ declarations are thus not credible and should be given

little weight. *See Monterey Rsch.*, 2022 WL 526242, at *8 (discounting movant's declaration based

on similar issues). When its declarations are taken with the requisite grain of salt, Google is left

with little other evidence to carry its heighted burden here. On this basis alone, the Motion can be

█████████████████

denied. *See id.* ("[T]he lack of credibility behind certain evidence supporting a motion could (easily) stand alone as a basis for finding that a movant has failed to meet its burden.").

**B.    The private interest factors weigh strongly against transfer.**

**1.    The relative ease of access to sources of proof weighs strongly against transfer.**

All of Flyp's documents are located at its offices in Bedford and Dallas, Texas. (Ex. 1 ¶¶ 34, 35). For its part, Google does not identify a single document located in or even near the NDCA. This factor weighs strongly against transfer.

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-CV-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). This factor relates to relative ease of access, not absolute ease of access. *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013).

Google says only "that as a matter of practice, documents about Google's products and services are ***typically*** created and maintained by the employees working on those products and services" and thus would be "***more easily retrievable*** from the NDCA." (Mot. at 3–4 (emphases added)). These generic allegations do not establish that Google's relevant documents are actually ***stored*** in the NDCA. *See Monterey Rsch.*, 2022 WL 526242, at *3 ("[G]eneral allegations unsupported by specific evidence do not tip the scales in a transfer analysis.").[8] Indeed, this Court has found that relevant access to electronic documents is most often tied to the physical location of the servers containing them. *Id.* at *4.

During venue discovery, Google represented that ████████████████████████ ████████████████████████ (Exs. 41, 42). But critically, ██████████████████

---

[8] Even if the Court were inclined to give credence to these generalized statements, relevant documents would also be found with Google's Austin-based witnesses, ████████████████ ██████████████████████████ *See* Section I.B above.

████████████████

████████████████. (Ex. 43). In terms of relative ease of access, the

████████████████████████████████████████████████████████

████████████████████████████████. (*Id.*; *see also* Ex. 38).

Furthermore, Google's proof is silent on the actual location of its relevant documents. Although it

could have done so, Google did not ████████████████████████████████

████. (Ex. 41; Ex. 3 at 105:3-25 ████████████████████████

████████████████████████████████████████████████

The only fact in evidence is that ████████████████████████████

████████████. Google has thus failed to carry its burden to clearly demonstrate that the

NDCA is a clearly more convenient forum to access its documents.

For its part, Flyp's electronic documents are stored in computers and servers located at its

Bedford and Dallas, Texas offices, which are closer to and far more conveniently accessed from

the WDTX. (Ex. 1 ¶¶ 34–35). And all of Flyp's hard documents are stored in those same offices.

Thus, the WDTX has relatively easier access to sources of proof from both parties, whether

from Flyp's offices or Google's data centers. This factor weighs strongly against transfer.

### 2.    The cost of attendance of willing witnesses weighs strongly against transfer.

The most important factor in the transfer analysis is the convenience of willing witnesses,

which includes all potential material and relevant witnesses. *In re Genentech, Inc.*, 566 F.3d 1338,

1342 (Fed. Cir. 2009).

Here, the WDTX will be more convenient than the NDCA for numerous witnesses located

in Texas, including all of Flyp's witnesses at its Bedford and Dallas offices: ████████████

████████████████████████████████████████. (Ex. 1 ¶¶ 24–28; *see*

*also* Ex. 14). While these employees can drive to Waco in about 90 minutes, travel to NDCA

would take much longer. (Ex. 1 ¶¶ 36–48). Indeed, they could reach Waco in the time it would take just to commute to DFW airport, clear security, and merely board a plane—the actual flight and travel time to the NDCA courthouse would add many more hours. (*Id.* ¶ 46). The Fifth Circuit has made clear that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004). Having to travel 1,500 miles to NDCA (Ex. 45) represents a 15-fold rise in inconvenience versus having to travel less than 100 miles to reach Waco.

The WDTX is also more convenient for several key Google employees. ████████ ████████████████████████████████████████████████████ currently in Austin and can likewise reach Waco far more conveniently than the NDCA. This factor weighs strongly against transfer.

> **3.     The availability of compulsory process to secure the attendance of non-party witnesses weighs against transfer.**

This factor focuses on the presence of non-party witnesses whose attendance may need to be secured by a court order. *See In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (finding that a non-party witness is presumed to be unwilling and thus considered under the compulsory process factor).

At least one former Google employee with knowledge relevant to ██████████ ████████████████. Because he is a non-party witness in the WDTX and within or nearly within 100 miles of the courthouse, this Court can likely secure Mr. ████ attendance. The NDCA cannot.

Google points to several prior art witnesses who reside in the NDCA. But as this Court has stated, "[b]ecause prior art witnesses are very unlikely to testify . . . the Court gives their location 'minimal' weight." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL

4905809, at *4 (W.D. Tex. Aug. 20, 2020). Indeed, here, the 17 prior art witnesses and two prior art entities identified by Google cannot all be deposed given the general discovery limitations in this case. Google's shotgun identification of potential witnesses is thus not credible. At most, Google **might** depose one or two such witnesses—or it *might* depose other prior art witnesses not in NDCA. And even if deposed, it remains unclear whether Google would call any such witness at trial. Rampant speculation on Google's part cannot carry its burden on this factor, and it accordingly weighs against transfer.

### 4. Other practical problems that make trial of a case easy, expeditious, and inexpensive weigh strongly against transfer.

This factor also weighs strongly against transfer for two reasons.

First, Google waited more than six months before filing its Motion. "[L]ate-filed motions to transfer are looked upon with extreme disfavor." *WSOU Invs. LLC v. Arista Networks, Inc.*, No. W-20-CV-01083-ADA, 2021 WL 6015526, at *5 (W.D. Tex. Nov. 5, 2021). Flyp filed its Complaint in this Court on January 10, 2022. Rather than promptly moving to transfer, Google proceeded with substantive litigation in the WDTX, moving to dismiss Flyp's indirect and willfulness allegations on May 2, 2022, which the Court subsequently granted and denied in part. (Dkts. 38, 48). Google then waited another 10 weeks before informing Flyp that it intended to move to transfer and did not file its Motion until July 19, 2022—more than six months after this case was filed. Because they waste both the Court's and the opposing party's time and resources, courts have repeatedly found that similar delays weigh against transfer. *See TQP Dev., LLC v. LinkedIn Corp.*, No. 2:12-CV-191-JRG-RSP, 2013 WL 12247813, at *6 (E.D. Tex. Mar. 28, 2013) (fining a five-month delay weighed against transfer); *N5 Techs., LLC v. Bank of Am., N.A.*, No. 2:12- CV-685-MHS-RSP, 2014 WL 558762, at *4–5 (E.D. Tex. Feb. 10, 2014) (finding a six-month delay weighed against transfer); *Good Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-

11

0134-JRGRSP, 2017 WL 750290, at *9 (E.D. Tex. Feb. 27, 2017) (finding a six-month delay weighed against transfer).

Second, judicial efficiency is served by keeping the case in the WDTX because the Court is already familiar with the Asserted Patents based on co-pending litigation and its prior consideration of issues like those presented in Google's *Markman* brief. Indeed, "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). Google argues these efficiencies should be discounted because they did not exist at the time suit was filed. (Mot. at 10 (citing *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013))). But Google's reliance on *EMC* for this point is misplaced. The Federal Circuit went on to say that "a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed. For example, we have held that a district court's experience with a patent in prior litigation *and the co-pendency of cases involving the same patent are permissible considerations* in ruling on a motion to transfer venue." *Id.* (emphasis added). This is true even when the co-pending case is ultimately dismissed. *Id.* ("Because the dismissal of [co-pending] suits as to the other defendants occurred later, it is not relevant to the venue inquiry. Accordingly, the district court could properly conclude that considerations of judicial economy favored retention of the cases."). When properly applied to the facts here, *EMC* weighs against transfer.

When Flyp filed its Complaint in this case, co-pending litigation involving the same five patents was already before this Court. (*See* Case No. 6:21-cv-00642-ADA). *Markman* briefing was already well underway in that case, including briefing into the term "primary telephone number." (*See id.* at Dkts. 24, 26). Thus, by the time Flyp filed this suit, this Court had already received

briefing and familiarized itself with one of the two major terms that the parties are disputing in this case. (*See* Dkts. 47, 49). Transfer to the NDCA would negate these judicial efficiencies.

For these reasons, this factor strongly weighs against transfer

**C.    The public interest factors weigh against transfer.**

**1.    The administrative difficulties flowing from court congestion weigh against transfer.**

This factor considers "whether there is an appreciable difference in docket congestion between the two forums." *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). Such congestion is measured by the time-to-trial for the transferor court and the transferee court. *In re Genentech*, 566 F.3d at 1347.

As compared to NDCA, "this Court has an established history of both reaching trial faster and of disposing of cases faster." *Motion Offense, LLC v. Google LLC*, Case No. 6:21-cv-514, Dkt. 79 at 22-24 (W.D. Tex. Oct. 4, 2022). For patent cases, this Court reaches trial in 27 months and otherwise terminates cases in 18 months. (Ex. 48 at 20, 40). Compared to NDCA's similar metrics of 46 months to trial and 23 months to termination (Ex. 49 at 2), this Court is 19 months faster to trial and five months faster to termination. Against these plain statistics, Google rests its argument on this Court's larger patent caseload. But this Court has found that "[d]espite this Court's larger patent caseload, this Court has consistently avoided congestion and reached trials faster than the NDCA, typically in about two years from case filings." *Motion Offense*, Dkt. 79 at 23 (collecting cases). These time-to-trial numbers are dispositive, and this factor weighs against transfer.

**2.    The local interest weighs against transfer.**

The Supreme Court has long held that there is "a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). Such local

█████████████████

interests "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021).

This case is a Texas-based dispute between two companies that proudly call Texas home. Flyp was founded in Texas, and its two offices are both within 100 miles of the Waco courthouse—localizing the interest in and near Waco. For its part, Google touts that it has "proudly called Texas home for more than a decade with offices in Austin and Dallas, and a data center in Midlothian"—a $600 million investment. (Exs. 38, 39). Google even touts specific connections between the WDTX and Google Voice. (Ex. 39) (quoting a local Plugerville business: "I have 300 reviews on my Google Business Profile. Google Voice allows me to follow up via text with a link to leave a review, so they don't have to search for it."). Google's presence in this District is not generalized, but specific to the facts here. Multiple Austin-based ███████████████████ have unique knowledge of relevant facts. And Google does not dispute that ████████████ ████████████████████████████████.

The proximity of identified witnesses, documents, and data gives the Waco Division specific, localized interests in this dispute. While the Federal Circuit has held that courts applying this factor should discount a plaintiff's in-state office if not located within the same District,[9] the Federal Circuit has not considered whether a Texas office within 100 miles of the Waco courthouse should be assessed similarly. Here, both of Flyp's offices are less than 100 miles from Waco. The Waco Division thus has an immediate local interest in this case and the plaintiff's patents—much more than might be so for other WDTX locales hundreds of miles away, such as El Paso or Midland-Odessa. Under Fifth Circuit law, the specific connections to North Central, Texas here give Waco a local interest in determining whether Flyp may use its patents to enjoin Google from making, selling, and using Google Voice, which may prevent Texans from using or accessing the

---

[9] *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022).

same. *See Def. Distributed v. Bruck*, 30 F.4th 414, 435-36 (5th Cir. 2022) (holding that Texas's local interest "cannot be overstated" in a case in which someone seeks "to bar [a party] from publishing its materials anywhere" and would reduce "Texans' access to [its] materials"). Against these specific interests, Google cites only generic interest in the NDCA based on its headquarters there and the original development of Google Voice there, which ignores the specific witnesses, documents, and data in the WDTX or within 100 miles of this courthouse. Google's generalized interest carries less weight than Waco's specific intertest here, and this factor accordingly weighs against transfer.

### 3. The remaining public interest factors are neutral.

Google too broadly argues that both forums are "experienced with the issues relevant to this case." (Mot. at 15). As noted above, the Court is more familiar with the issues specific to the parties' claim construction disputes. Nevertheless, because these remaining factors weigh general familiarity with patent law and conflicts issues, the parties agree they are neutral.

## III. CONCLUSION

For all these reasons, Flyp requests that the Court deny Google's Motion to Transfer. Google has failed to carry its high burden of proving that the NDCA is a clearly more convenient forum. This case is properly in the WDTX and should remain here.

**DATED:** October 21, 2022

Respectfully submitted,

*/s/ Thomas M. Melsheimer*
**Thomas M. Melsheimer**
Texas Bar No. 13922550
tmelsheimer@winston.com
**M. Brett Johnson**
Texas Bar No. 00790975
mbjohnson@winston.com
**Michael A. Bittner**
Texas Bar No. 24064905
mbittner@winston.com
**Steven R. Laxton**
Texas Bar No. 24120639
slaxton@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500

**Matthew R. McCullough**
California Bar No. 301330
mrmccullough@winston.com
**WINSTON & STRAWN LLP**
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
Telephone: (650) 858-6500

**William M. Logan**
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2766

**ATTORNEYS FOR PLAINTIFF**

████████████████

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5. Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Administrative Policies and Procedures for Electronic Filing in Civil and Criminal Cases, Western District of Texas, Section 14.

/s/ *Michael A. Bittner*
Michael A. Bittner

17