**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **FLYPSI, INC., (D/B/A FLYP),** | § | |
| *Plaintiff* | § | |
| | § | |
| **-vs-** | § | **W-22-CV-00031-ADA** |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant* | § | |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER

Before the Court is Defendant Google LLC's ("Google's") Motion to Transfer Venue to the Northern District of California. ECF No. 42. Plaintiff Flypsi, Inc. ("Flyp") opposes the motion. ECF No. 64. Google filed a reply to further support its motion. ECF No. 68. After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** Google's motion to transfer venue to the Northern District of California.

## I.     FACTUAL BACKGROUND

In its complaint, Flyp claims Google infringed on U.S. Patent Nos. 9,667,770 ("the '770 Patent"), 10,051,105 ("the '105 Patent"), 10,334,094 ("the '094 Patent"), 11,012,554 ("the '554 Patent"), and 11,218,585 ("the '585 Patent") (collectively, the "Asserted Patents"), which relate to a telephone network system and method. ECF No. 50 ¶¶ 24−28. Flyp, the owner of the Asserted Patents, is a corporation organized under the laws of the state of Delaware with its principal place of business in Bedford, Texas. *Id.* ¶ 1. Google is a limited liability company organized under the laws of the state of Delaware. *Id.* ¶ 6. Google's headquarters are located in Mountain View, California. ECF No. 42 at 3. Google is registered to do business in the State of Texas. ECF No. 50 ¶ 2. According to Flyp, Google sells products and methods that infringe the Asserted Patents,

1

including Google's app-based telephone feature known as Google Voice. *Id.* ¶¶ 30, 42, 54, 69, 83. The Court will refer to these products collectively as the "Accused Products."

In addition to this case, Flyp filed one other case in this District alleging infringement of the Asserted Patents. *Flypsi, Inc. v. Dialpad, Inc.*, No. 6:21-cv-00642-ADA (W.D. Tex. June 21, 2021) (the "Dialpad Litigation"). In the Dialpad Litigation, this Court handled the proceedings through the *Markman* hearing. No. 6:21-cv-00642-ADA (W.D. Tex. Apr. 14, 2022), ECF No. 53. The case was subsequently dismissed after the parties filed a joint motion and stipulation of dismissal. No. 6:21-cv-00642-ADA (W.D. Tex. Sept. 14, 2022), ECF No. 75.

After responding to Flyp's complaint, Google filed the instant motion to transfer. ECF No. 42. Google does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Northern District of California ("NDCA") is a more convenient forum, pointing to the location of potential witnesses, the location of relevant records, and the local interest in California. *Id.* at 1. Flyp contends that the case should remain in the WDTX, pointing to, among other factors, Flyp's witnesses and evidence in Texas, Google's relevant witnesses in the WDTX, and this Court's experience with the Asserted Patents. ECF No. 64 at 1, 12.

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that

a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.    DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Neither party disputes that venue could be proper in the NDCA. ECF No. 42 at 5; ECF No. 64. Google operates a regular and established place of business in the NDCA. ECF No. 42 at 5. This Court therefore finds that venue would have been proper in the NDCA had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine if the NDCA is a clearly more convenient forum than the WDTX.

### A.  The Private Interest Factors

#### i.    *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than

distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

According to Google, "nearly all" of the relevant witnesses are based in the NDCA. ECF No. 42 at 7. Google also claims that the only other relevant party witnesses are located in Seattle, Washington and Washington, D.C. *Id.* at 3. Flyp claims that there are also relevant Google employees in the WDTX. ECF No. 64 at 10. Flyp also claims that its witnesses are located in Bedford, Texas and Dallas, Texas. *Id.* at 9. Each group of witnesses will be discussed further below.

### 1. Google's Employees in the NDCA

According to Google, most of its employees knowledgeable of the Accused Products are located in the NDCA. ECF No. 42 at 7. Google has identified the following potential willing witnesses in the NDCA that can testify to the technical aspects of the Accused Products: (1) ████ ████, a project manager involved in the development of the frontend user interface of Google Voice, (2) ████, a software engineer involved in the design of Google Voice, (3) ████ ████, ████████████████████████████ involved in all engineering efforts for Google Voice, (4) ████████, an engineering manager involved in the backend operation of Google Voice, and (5) ████████, an engineering manager involved in the operation of Google Voice via mobile device applications and on the web platform. ECF No. 42-2 ¶¶ 4, 7. Google also suggests that there are witnesses in the NDCA with knowledge of the marketing and sales aspects of the Accused Products, although Google does not specifically identify these witnesses or explain

why they might testify at trial. ECF No. 42 at 3; ECF No. 42-1 ¶ 7. Because all of these relevant Google employees are based in the NDCA, Google argues that the NDCA is a more convenient forum for these potential witnesses. ECF No. 42 at 8. Flyp does not seem to dispute that the NDCA would be a more convenient forum for these employees.

The Court finds that the identified Google witnesses would be relevant at trial. As Google's declarant, ██████████, has stated, the five identified technical employees have relevant knowledge of the development, design, and operation of Google Voice. ECF No. 42-2 ¶¶ 4, 7. Flyp generally argues that Mr. █████'s declaration is not credible because Mr. █████ only focuses on facts as of January 2022. ECF No. 64 at 7. But Flyp has not disputed the relevance of these technical witnesses. Thus, the Court sees no reason to disagree with Mr. █████'s declaration that Messrs. █████, █████, █████, █████, and █████ are relevant party witnesses. The Court does not give great weight to the other NDCA-based Google employees with knowledge of the marketing and sales of Google Voice because Google did not identify these employees with any specificity or describe why they would be relevant at trial. Because Google specifically identified two marketing employees based outside the NDCA, the Court believes it is more likely that Google would call these two witnesses to testify at trial regarding marketing and sales.

The Court agrees with Google that the NDCA would be a more convenient forum than the WDTX for Google's employees based in the NDCA. The relevant consideration here is "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, 2021 WL 4427899, at *4. Google's NDCA-based employees would be more inconvenienced if they were called to testify in the WDTX than in the NDCA. Thus, the Court finds the presence of these Google employees in the NDCA weighs in favor of transfer.

2.   <u>Google's Employee in Seattle, Washington and Washington, D.C.</u>

Google identifies two marketing employees outside of both the NDCA and the WDTX: (1)

██████████, ████████████████████████████████████, and (2) ████████████,

the ██████████████████████████████████████. ECF No. 42-1 ¶¶ 5, 7, 9. Mr. ████████

is based in Seattle, Washington and is responsible for marketing and promotion of Google Voice.

*Id.* ¶ 7. Mr. ████████ is based in Washington, D.C. and is responsible for the "go-to-market"

strategy of Google Voice. *Id.* ¶ 9. Google argues that Mr. ████████'s presence in Seattle weighs in

favor of transfer because Seattle is closer to the NDCA than the WDTX. ECF No. 42 at 7−8.

Google does not appear to argue that Mr. ████████'s presence in Washington, D.C. impacts the

analysis of this factor. In response, Flyp argues that Google's second declarant, William Randall,

who identified these witnesses, is not credible. ECF No. 64 at 6. Flyp argues that Mr. Randall

focused only on the facts as they existed as of January 2022. *Id.* Flyp argues that Mr. Randall

should have considered what sales and marketing witnesses would have been relevant as far back

as May 2017, when the '770 Patent was issued and the hypothetical negotiation under *Georgia-*

*Pacific* would have taken place. *Id.* at 7. Flyp complains that Mr. ████████ and Mr. ████████ are

relatively new employees to Google—Mr. ████████ joined Google in 2021 and Mr. ████████

joined in 2020. *Id.*; ECF No. 42-1 ¶ 7; ECF No. 64-3 at 86.

The Court agrees with Flyp that employees with knowledge of Google Voice's marketing

and financials at the time of the hypothetical negotiation under *Georgia-Pacific* would be relevant.

However, the Court does not fully discredit Mr. Randall's declaration for this reason. Both Google

employees that Mr. Randall identifies are currently involved in the marketing and promotion of

the Accused Products and may be relevant in determining the damages applicable in this case.

Thus, the Court will still consider these Google employees in its analysis of this factor.

The Court finds that Mr. ███████'s presence in Seattle weighs slightly in favor of transfer. The relevant consideration here is "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, 2021 WL 4427899, at *4. While the parties have not provided any evidence regarding travel between Seattle and the two forums, the Court assumes that the cost and inconvenience to Mr. ██████ to travel from Seattle to the NDCA would be at least slightly less than the cost and inconvenience to travel from Seattle to Waco. Thus, Mr. ██████'s presence in Seattle weighs slightly in favor of transfer. The Court also finds that Mr. ██████'s presence in Washington, D.C. does not affect the outcome of this factor. Regardless of whether trial takes place in the NDCA or the WDTX, Mr. █████████ will have to travel a significant distance and will be away from his work and home for an extended period of time.

3. <u>Google's Employees in the WDTX</u>

Google admits that the following employees are located in the WDTX: (1) ████████████, an operations engineer for the Google Telephony Platform ("GTP") and (2) ████████████, a software engineer for GTP. ECF No. 42-2 ¶¶ 9–10. Google emphasizes that these witnesses work with GTP, and ████████████████████████████████████████████. *Id.* ¶ 9. Flyp argues that Google's emphasis on the division between Google Voice and GTP is misplaced. ECF No. 64 at 3. Flyp claims that the division between Google Voice and GTP is "purely administrative." *Id.* Flyp points out that the ████████████████████████████ ████████████. *Id.*; ECF No. 64-3 at 52. Flyp also points to deposition testimony from Google's corporate witness, Mr. ██████, which explains that █████████████████████████████ ████████████████. ECF No. 64 at 4; ECF No. 64-3 at 57. Lastly, Flyp points to Google technical documents that suggest that ██████████████████████████, which

is a functionality of the Accused Products that Flyp alleges infringe the Asserted Patents. ECF No. 64 at 4; ECF No. 64-16; ECF No. 64-19 ("███████████████████████████████████ ██████████████████████████████████████."). Flyp argues that because of the close connection between Google Voice and GTP, Google employees within the GTP team may be relevant at trial. ECF No. 64 at 4. Flyp argues that Mr. ██████ may have relevant "███████████████████████████████████████████," and Mr. ████ may have relevant "█████████████████████████████████ ███████████████████████████████████████████ ██████." *Id.* In response, Google argues that Flyp has failed to show how Messrs. ██████ and ██████ are more relevant than the other employees identified by Google. ECF No. 68 at 3.

The Court finds that Messrs. ██████ and ██████ may be relevant witnesses at trial and should be considered in the analysis of this factor. The Asserted Patents here relate to "setting up and connecting telephone calls, and delivering information related to such telephone calls using an Internet Protocol (IP) or other data channel." '770 Patent at 1:15−18. Google has explained that the GTP team is responsible for "█████████████████████████████████████ ████████████████████████████████████████████████████ ████." ECF No. 42-2 ¶ 9. Thus, Google's GTP team seems crucial to determining whether Google Voice, █████████████████████████████████████████████, infringe the Asserted Patents. Google has only identified one GTP employee in the NDCA—Mr. ██████. ECF No. 64-3 at 52. Mr. ██████ is assigned to both the Google Voice and GTP teams. *Id.* While the Court agrees that Mr. ██████ likely has knowledge relevant to this case, Messrs. ██████ and ██████ likely also have knowledge specific to their engineering roles that might be relevant at trial. The Court agrees with Flyp that Mr. ██████ likely has relevant knowledge regarding call

routing. The Court also agrees with Flyp that Mr. ███ likely has relevant knowledge regarding ██████████████████████████████████████, which may be important to determining damages in this case.

Flyp also points to two other Google employees in the WDTX who may have relevant knowledge. First, Flyp points to ██████, a software engineer that worked on Google Voice from May 2017 to August 2018. ECF No. 64 at 7. Flyp also points to ████████. ECF No. 64 at 5. Ms. ████ has knowledge of Google's sales of its products through ██████, a third-party company involved in the design, development, marketing, and sale of Google Voice. *Id.* at 4−5; ECF No. 64-3 at 34. Google argues that Flyp has failed to establish that Mr. ████ has knowledge relevant to this case. ECF No. 68 at 3. Google also argues that Ms. ████ is not relevant because "Google established that ████████ (WDWA) and ████████ (DDC), not Ms. ████, are most knowledgeable about 'sales and marketing efforts related to Google Voice.'" *Id.*

The Court agrees with Google that Flyp has failed to show why Mr. ████ would have knowledge relevant to this case. Flyp does not allege that Mr. ████ has any particularly relevant knowledge. ECF No. 64 at 7, 10. Mr. ████ worked in the Google Voice for a relatively short period of time—from May 2017 to August 2018. *Id.* at 7. While the time period that Mr. ████ worked in the Google Voice team falls within the time frame of the alleged infringement, Flyp has failed to provide any additional information about Mr. ████'s work on Google Voice that would show he has knowledge relevant at trial. Further, Mr. ████'s deposition testimony suggests that any knowledge Mr. ████ has of Google Voice involves the web front end and "aesthetic pages," which are likely not relevant to the Asserted Patents. ECF No. 64-3 at 41. Thus, the Court does not place great weight on Mr. ████'s presence in the WDTX.

However, the Court agrees with Flyp that Ms. ███'s presence in the WDTX weighs against transferring this case to the NDCA. As Google's corporate witness, Mr. ███, indicated, Ms. ███ has relevant knowledge about the services ███ provides to Google. ECF No. 64-3 at 34−35. Mr. ███ also indicated that ███ helps Google sell to some of its customers. *Id.* at 34. While Google argues that Ms. ███ is not relevant because Google's declarant, Mr. Randall, has identified other witnesses to testify regarding Google's sales and marketing, the Court is not inclined to discredit an identified party witness simply because the party's declarant chose to point to other witnesses. Because Ms. ███ works with third-party companies on the sales and marketing of Google Voice, she may have unique knowledge that Google's identified witnesses do not possess. Google has not provided any reason to suspect that Ms. ███'s knowledge is irrelevant in this case.

The Court finds that the presence of Ms. ███ and Messrs. ███ and ███ weigh against transferring this case to the NDCA. For these Google employees, the WDTX is a much more convenient forum than the NDCA. If this case remains in the WDTX, these employees would only have to take a short drive to Waco to testify at trial. However, if this case is transferred to the NDCA, these employees would have to travel a significant distance and be away from their homes and work for an extended period of time. *In re Google, LLC*, 2021 WL 4427899, at *4. Thus, the presence of these three Google employees in the WDTX weighs against transfer.

### 4. Flyp's Employees

Flyp identifies the following Flyp employees near the WDTX as relevant party witnesses in this case: (1) ███████, (2) ████████, (3) ██████, (4) ████, (5) █████, (6) ███████, (7) ██████, and (8) ██████. ECF No. 64 at 9; ECF No. 64-1 ¶¶ 1−2, 26−27. ██████, ████, █████,

███████, ████████, and ████████ are all engineers at Flyp. ECF No. 64-1 ¶ 27. Flyp

also identifies two support personnel, a chief legal officer and a graphics designer, who may have

relevant knowledge to this case. ECF No. 64 at 9; ECF No. 64-1 ¶ 28. All of Flyp employees are

located in Flyp's offices in Bedford, Texas and Dallas, Texas. ECF No. 64 at 9. The offices in

Bedford and Dallas are within 90 minutes of Waco. *Id.*; ECF No. 64-1 ¶¶ 40−41.

Google argues that the Court should not consider Flyp's ████, engineers, or support staff

in the analysis of this factor because Flyp failed to provide any information regarding their

relevance to the litigation. ECF No. 68 at 3. Google also points out an inconsistency between

Flyp's declarant's claim that Mr. ████ is an engineer at Flyp, ECF No. 64-1 ¶ 27, and Flyp's

brief, which states that Mr. ████ is no longer associated with Flyp, ECF No. 64 at 2 n.2. ECF No.

68 at 3 n.2. However, Google admits that Mr. █████ is a relevant witness near the WDTX. *Id.* at

2.

Beginning with █████████, Mr. ██████, both parties agree that Mr. ██████ is a relevant

party witness. ECF No. 64 at 9; ECF No. 68 at 2. Both parties also seem to agree that the WDTX

is a more convenient forum than the NDCA for Mr. ██████. ECF No. 64 at 9; ECF No. 68 at 2.

Thus, the Court determines that Mr. ██████'s presence near the WDTX weighs against transfer

because the WDTX would be a more convenient forum than the NDCA for this witness.

Next, the Court considers Flyp's other employees. Google argues that █████████,

engineers, and support personnel are irrelevant to the analysis of this factor because Flyp has not

described what knowledge they possess that would be relevant to this case. ECF No. 68 at 3. To

support its argument, Google cites *MemoryWeb, LLC v. Samsung Electronics Co., Ltd.*, No. W-

21-CV-00411-ADA, 2022 WL 2195025 (W.D. Tex. June 17, 2022). In *MemoryWeb*, the Court

was not persuaded that all of the prior art witnesses identified by the defendant were relevant to

the case. *Id.* at *4. In particular, the Court determined that the defendant "cherry-pick[ed] witnesses without a reasoned explanation as to why it chose particular individuals outside of their convenient residence in the preferred forum." *Id.* These circumstances are not at play here. Flyp is not cherry-picking third-party witnesses based on its desire to remain in the WDTX—Flyp is identifying its own employees that reside near this District. Except for one remote employee located in Hawaii (and discussed below), these are the only employees that Flyp has. While the Court in *MemoryWeb* had reason to doubt the relevancy of the defendant's prior art witnesses, the Court here does not have the same reason to doubt the relevancy Flyp's party witnesses. The Court has reason to believe that Flyp's party witnesses likely have information relating to Flyp's patented technology and efforts to commercialize, which may be relevant at trial.

Because of the inconsistency between Flyp's declarant and its briefing, the Court does not consider Mr. ███ under this factor. Based on Flyp's briefing, it appears that Mr. ███ no longer works for Flyp. Mr. ███ will be considered under the compulsory process factor below. *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018) ( "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor."). Furthermore, the Court acknowledges that it is unlikely that all of the identified Flyp employees will testify at trial, especially considering Flyp has not identified specific knowledge that each employee possesses that would be needed in this case. The Court concludes that the presence of Flyp's employees near the WDTX weighs against transfer. The WDTX would be a more convenient forum than the NDCA for these employees because they would be able to testify at trial in Waco without traveling a significant distance and without spending a significant amount of time away from their homes and their work.

Lastly, the Court considers ███████ and ███████. Google identifies these two individuals as Flyp employees in its motion. ECF No 42 at 2. However, Flyp explains that Mr. ███████ no longer works at Flyp. ECF No. 64 at 3 n.4; ECF No. 64-1 ¶ 32. Mr. ███████ will be considered under the compulsory process factor below. Mr. ███████ is still a Flyp employee and works remotely from his home in Hawaii. ECF No. 64 at 3 n.4; ECF No. 64-1 ¶ 33. The Court finds that the presence of Mr. ███████ in Hawaii does not impact the analysis of this factor. Regardless of whether this case remains in the WDTX or is transferred to the NDCA, Mr. ███████ will have to travel a significant distance and be away from his home for a significant period of time to testify at trial. Thus, Mr. ███████ would be equally inconvenienced if he is called to testify in either forum.

### 5.  Conclusion

The Court finds this factor is neutral. While Google has identified five Google employees in the NDCA and one in Seattle that would find the NDCA a more convenient forum, Flyp has identified three relevant Google employees in the WDTX that would find this Court a more convenient forum. Further, Flyp's own witnesses are located nearby in Bedford and Dallas, Texas. Thus, key witnesses are located near both forums. Neither forum is more convenient for the party witnesses as a whole.

### ii.     *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs

in favor of transfer to that location." *In re Apple Inc*., 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

According to Google, this factor weighs in favor of transfer because the relevant document custodians are located in the NDCA. ECF No. 42 at 6. Further, Google argues that the Accused Products were researched, designed, developed, and tested in the NDCA. *Id.* Google claims that "certain physical devices" used to test the Accused Products are more accessible in the NDCA. *Id.* at 7. Google also claims that third-party witnesses residing in the NDCA may possess relevant evidence. *Id.* at 6−7. Google also points out that the bulk of the evidence in a patent case comes from the accused infringer. ECF No. 68 at 1.

In response, Flyp argues that this factor weighs against transfer because all of its evidence is maintained and stored near this Court in Bedford and Dallas. ECF No. 64 at 8. Flyp claims that Google's generic allegations that its documents are "typically" created and maintained with employees working with those products and services do not show that Google's documents are actually stored in the NDCA. *Id.* Flyp complains that Google has failed to identify where its electronic documents are stored. *Id.* Flyp argues that Google's electronic documents are stored in data centers around the world. *Id.* None of these data centers are located in the NDCA. *Id.* at 8−9. One data center is located near this Court in Midlothian, Texas. *Id.* at 9. Because Google has failed to identify which data center its relevant electronic documents are located in, Flyp argues that Google has failed to carry its burden of showing that the NDCA is a more convenient forum. *Id.* Flyp also argues that even if Google's allegations are true, relevant documents are also likely stored with Google's Austin-based witnesses. *Id.* at 8 n.8.

To start, the Court notes that the Fifth Circuit has recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in either

forum. *In re Planned Parenthood Fed'n of Am., Inc.*, No. 22-11009, 2022 WL 16549164, at *3 (5th Cir. Oct. 31, 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id.* But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple, Inc.*, No., 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). To the extent that these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location where electronic documents are typically accessed. But the Court still considers the location of document custodians of electronic documents in its analysis of this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

The Court agrees with Google that at least some of its electronic evidence is likely maintained and created by Google employees in the NDCA. The Federal Circuit has held that it is an error for the Court not to consider "the location of document custodians and [the] location where documents are created and maintained" within the analysis of this factor. *Id.* As the Court discussed above in analyzing the willing witness factor, there are likely Google employees with relevant knowledge in the NDCA. However, because Google has failed to provide the Court with any specifics of the documents these employees create and maintain, the Court is only able to conclude that it is likely that at least some relevant electronic documents are created and maintained in the NDCA.

Based on the same rationale, the Court agrees with Flyp that electronic documents are also likely created and maintained by Google employees in the WDTX. As discussed above, Flyp has established that at least three relevant Google employees are located in the WDTX. These employees likely create and maintain electronic documents related to the Accused Products that

may be relevant to this case. Thus, the Court concludes that it is likely that at least some relevant Google documents are created and maintained in the WDTX.

Turning to Google's physical evidence, Google claims that "certain physical evidence" is located in the NDCA. ECF No. 42 at 6. However, Google only explains that this physical evidence is held by third parties in the NDCA and includes "certain physical devices used for the verification of Google Voice Functionality." ECF No. 42-2 ¶ 8. Google does not explain why these "certain physical devices" are relevant to this case. Because Google has provided minimal information about this physical evidence, it is difficult to weigh the importance of these physical devices. However, the Court concludes that the presence of these "certain physical devices" in the NDCA weighs in favor of transfer.

The Court sympathizes with Flyp's frustration regarding the physical location of Google's electronic evidence. The Court agrees with Flyp that the physical location of electronic information is relevant to the Court's analysis of this factor. However, the Court is unable to conclude, based on the presence of a Google data center in the State of Texas, that the relevant electronic documents are stored in this State. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *6 (Fed. Cir. Sept. 27, 2021) ("Nor does the fact Google stores documents in electronic form at data centers around the country weigh in favor of holding trial in Texas."). Thus, the physical location of Google's electronic evidence is not included in the analysis of this factor.

Next, the Court considers Flyp's evidence. Flyp's evidence, both electronic and physical, is all located in its Bedford and Dallas offices, which are within 100 miles of this Court. Flyp explains that its electronic documents are stored in computers and servers in Bedford and Dallas. ECF No. 64 at 9. Further, Flyp states that its physical documents are located in its Bedford and Dallas offices as well. *Id.* Flyp's electronic and physical evidence includes all of its information

17

"about the conception and reduction to practice of its invention, the development and operation of its commercial application, the advertising and marketing of its application, and its finances." *Id.* at 3. The Court agrees with Flyp that all of Flyp's documents are more easily accessible in the WDTX. It would be much easier to transport Flyp's evidence to this Court than to the NDCA.

Lastly, Google argues that certain third parties located in the NDCA may have relevant evidence. ECF No. 42 at 6−7. As discussed below, Google has identified seventeen third-party witnesses in the NDCA. *Id.* at 9. Other than the "certain physical devices" used in testing Google Voice discussed above, Google does not provide any explanation for what electronic or physical information these third-party witnesses may possess. Google simply claims that these third-party witnesses "may possess documents relevant to issues of invalidity, noninfringement, and damages." *Id.* at 6−7. The Court concludes that the presence of these hypothetical third-party documents in the NDCA weighs slightly in favor of transfer.

Because relevant documents are likely located in or near both the NDCA and the WDTX, the Court finds that this factor is neutral. Google's electronic evidence is created and maintained by employees in both forums. While third parties may have "certain physical evidence" in the NDCA, it is unclear how important this evidence is to this case because Google has not provided an explanation of its relevance. Further, there is no doubt that all of Flyp's evidence, physical and electronic, is more accessible in the WDTX. Thus, because relevant documents are located near both forums, this factor is neutral.

### iii.    *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense."

Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018).

Google argues that this factor weighs in favor of transfer because it has identified seventeen third-party witnesses in the NDCA. ECF No. 42 at 8−9. Nine of these witnesses are inventors of prior art who have "critical testimony regarding issues of invalidity." *Id.* at 4. Five of these witnesses are employees of prior art systems, including RingCentral Office and Cisco BroadWorks, who reside in the NDCA. *Id.* at 4. Google argues that the third-party entities that developed these prior art systems likely have additional relevant employees beyond the five identified employees. *Id.* at 9. Two of the seventeen witnesses are the founders of the prior art system GrandCentral. *Id.* at 4. Lastly, Flyp's patent prosecution counsel, Stuart West, is located in the NDCA. *Id.* Google argues that Mr. West's testimony is particularly important because Google plans to argue that the '585 Patent is unenforceable due to inequitable conduct. *Id.* at 9.

In response, Flyp identifies one former Google employee who may be relevant at trial, █████, who resides in the WDTX. *Id.* at 10. Flyp argues that Mr. ███'s testimony is relevant because he worked on the Google Voice iOS application, which is an Accused Product in this case. *Id.* at 3. Further, Flyp identifies two former Flyp employees who reside within this Court's subpoena power and may be relevant at trial: (1) ████████ and (2) █████████. *Id.* at 2 n.2. Flyp

argues that the prior art witnesses identified by Google are irrelevant because they are unlikely to testify at trial. *Id.* at 10. Flyp argues that all sixteen prior art witnesses cannot be deposed because of the general discovery limitations. *Id.* at 11. Flyp claims "Google's shotgun identification of potential witnesses is thus not credible." *Id.*

First, the Court agrees, and Flyp does not appear to dispute, that Mr. West is a relevant third-party witness. Google has specifically identified why Mr. West's testimony would be relevant at trial. Because Google plans to raise an inequitable conduct defense, the Court concludes that Mr. West is a relevant third-party witness. The Court concludes that Mr. West's potential testimony weighs in favor of transfer because Mr. West is within the subpoena power of the NDCA.

Second, the Court agrees that the sixteen prior art witnesses identified by Google may be relevant at trial. While the Court agrees with Flyp that prior art witnesses are unlikely to testify at trial, the Federal Circuit has held it is an error to disregard prior art witnesses simply because prior art witnesses are generally unlikely to testify at trial. *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). The Court concludes that the prior art witnesses have relevant knowledge of the prior art references and systems that Google may rely on in its invalidity defense. Because these prior art witnesses are located within the subpoena power of the NDCA, the Court concludes that their potential testimony weighs in favor of transfer.

Third, the Court finds that the presence of one former Google employee and two former Flyp employees within the subpoena power of this Court weighs against transfer. Mr. ■, a former Google employee, worked at Google for seven years and worked on the accused Google Voice iOS application. ECF No. 64 at 3 & n.4. Mr. ■ may have knowledge of the Accused Products that would be relevant in this case. While Google argues that Mr. ■'s knowledge is not relevant,

Google's corporate representative, Mr. ███, explained that he did not investigate Mr. ███'s knowledge of the Accused Products. ECF No. 42-2 ¶ 7; ECF No. 64-3 at 35. Because Google failed to investigate further, the Court is left to assume that Mr. ███ has relevant knowledge of the Accused Products based on Flyp's evidence. Additionally, the two former Flyp employees, Messrs. ███ and ██████, likely have relevant knowledge of Flyp's invention and marketing efforts. Both worked on Flyp's efforts to commercialize. ECF No. 64-9 (a news article quoting Messrs. ███ and █████ regarding Flyp's development efforts). Their knowledge may be relevant to this case. Thus, the Court concludes that the presence of Messrs. ██, █████, and ██████ within the subpoena power of this Court weighs against transfer.

The Court also notes that two of the inventors of the Asserted Patents, Ivan Zhidov and Sunir Kochhar, are no longer employees at Flyp. ECF No. 64 at 2 n.3. Mr. Zhidov is located in Oklahoma and Mr. Kochhar is located in Arizona. *Id.* Further, one former Flyp employee, Mr. █████, is located in Hawaii. *Id.* Because there is no indication that these individuals are willing to testify at trial, they are presumed to be compulsory witnesses. *In re HP Inc.*, 2018 WL 4692486, at *3 n.1. However, because all three of these individuals are outside the subpoena power of both the NDCA and the WDTX, they have no impact on the outcome of this factor.

The Court concludes that this factor weighs at least slightly in favor of transfer. Google has identified a significant number of witnesses that are located in the NDCA. The Court is particularly persuaded that Mr. West, Flyp's prosecution counsel, may be relevant in this case. However, Flyp has also identified former Google and Flyp employees in the WDTX that may have relevant testimony. While the sheer quantity of identified third-party witnesses is greater in the NDCA, the former employees from Google and Flyp are more likely to have relevant testimony than Google's sixteen prior art witnesses. Thus, the Court finds this factor weighs slightly in favor of transfer.

### iv.   *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Google argues that this factor is neutral because even though the Dialpad Litigation was also pending in this Court when Flyp filed its complaint against Google, this Court had only nominal familiarity with the Asserted Patents at the time of the complaint. ECF No. 42 at 10. Google also claims that the Dialpad Litigation does not weigh strongly against transfer because it involves different accused products. *Id.* at 11. Google further argues that because the Dialpad Litigation is no longer pending, there is no chance for overlap of discovery, evidence, proceedings, and trial. ECF No. 68 at 4. Lastly, Google argues that even if the Dialpad Litigation weighs against transfer, this factor cannot outweigh all of the other factors favoring transfer. ECF No. 42 at 10.

Flyp argues that this factor weighs against transfer because Google waited for six months before filing the present motion. ECF No. 64 at 11. Flyp argues that rather than promptly filing a motion to transfer, Google continued with substantive litigation in this District for six months before it filed the present motion. *Id.* Flyp points to other courts that have found that waiting to file a motion to transfer venue weighs against transfer. *Id.* at 11−12 (citing *TQP Dev., LLC v.*

*LinkedIn Corp.*, No. 2:12-CV-191-JRG-RSP, 2013 WL 12247813, at *6 (E.D. Tex. Mar. 28, 2013); *N5 Techs., LLC v. Bank of Am., N.A.*, No. 2:12- CV-685-MHS-RSP, 2014 WL 558762, at *4–5 (E.D. Tex. Feb. 10, 2014); *Good Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV0134-JRGRSP, 2017 WL 750290, at *9 (E.D. Tex. Feb. 27, 2017)). Flyp also argues that judicial efficiency is served by keeping this case in the WDTX because this Court has experience with the Asserted Patents through the Dialpad Litigation. *Id.* at 12. In response to Google's argument that the Dialpad Litigation does not weigh against transfer, Flyp argues that "the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *Id.* (quoting *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013)).

First, the Court finds that this factor weighs against transfer because the Dialpad Litigation was co-pending in this Court at the time that the complaint was filed. While the Dialpad Litigation has since been dismissed, the case reached the *Markman* stage before this Court. *Flypsi, Inc. v. Dialpad, Inc.*, No. 6:21-cv-00642-ADA (W.D. Tex. Apr. 14, 2022), ECF No. 53. This Court has more familiarity with the Asserted Patents than the NDCA, which will allow it to resolve disputes regarding the Asserted Patents more expeditiously. The Court disagrees with Google that this factor is neutral because the Court had not reached the *Markman* hearing for the Dialpad Litigation at the time this complaint was filed. As Flyp correctly notes, it is appropriate for the Court to consider "any judicial economy benefits which would have been *apparent* at the time the suit was filed." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (emphasis added). It would have been apparent at the time that this suit was filed that the co-pending Dialpad Litigation could benefit judicial economy. And while the Dialpad Litigation did not involve the same accused products as this case, it involved the same Asserted Patents. The two cases inevitably "involve the same or similar issues," including claim construction, patent validity, and conception.

*PersonalWeb Techs., LLC*, 2013 WL 9600333, at *5. Thus, the Court concludes that the Dialpad Litigation, co-pending in this Court at the time of the complaint, weighs against transfer.

The Court disagrees with Flyp that this factor weighs against transfer simply because Google waited six months to file its motion to transfer venue. Other than resolving Google's motion to dismiss, the Court has not expended significant judicial resources on this case. This case has not yet reached the *Markman* stage. Thus, there is no significant risk that judicial resources will be wasted because Google waited six months before it filed the present motion. Two of the cases Flyp relies on, *TQP Development LLC v. LinkedIn Corp.* and *N5 Techs., LLC v. Bank of America, N.A.*, do not stand for the proposition that a delay in filing a motion to transfer venue causes this factor to weigh against transfer. *TQP Dev. LLC*, 2013 WL 12247813, at *5; *N5 Techs., LLC*, 2014 WL 558762, at *4. And the facts of *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.* are distinguishable because the briefing on the transfer motion in that case was not yet complete before the *Markman* hearing. 2017 WL 750290 at *9. Because Google's delay did not cause this Court to expend significant judicial resources before deciding the transfer motion, the Court does not find that this factor weighs against transfer because of Google's delay.

Based on the co-pendency of the Dialpad Litigation at the time this case was filed, the Court finds this factor weighs against transfer.

## B. The Public Interest Factors

### i. *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and

when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Google argues that this factor weighs in favor of transfer because the "origin" of this case is in the NDCA. ECF No. 42 at 12. Google also argues this factor weighs in favor of transfer because this District has become congested. *Id.* at 12−13. In the alternative, Google argues that this factor should be neutral because even though this Court is more congested than the NDCA, it is significantly faster. *Id.* at 13. Flyp argues that this factor weighs against transfer because this Court has an established history of reaching trial faster than the NDCA. ECF No. 64 at 13.

The Court is not persuaded that this factor favors transfer because the "origin" of this suit is in the NDCA. While some of Google's employees who worked on the Accused Products are located in the NDCA, the Asserted Patents were developed closer to this Court and Google employees worked on the Accused Products in this District. Thus, there is no clear "origin" of this suit. With regard to the speed of each forum, the Federal Circuit has previously held that there are "no significant differences in caseload or time-to-trial statistics" between the WDTX and the NDCA. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021). But recent statistics show that this Court has been able to bring cases to trial within two years.[1] Data from Flyp suggest

---

[1] *See, e.g., MV3 Partners v. Roku, Inc.*, 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-

that the NDCA takes an average of forty-six months to reach trial. ECF No. 64 at 13; ECF No. 64-49 at 2. Both Google and Flyp appear to agree that this Court is able to reach trial faster than the NDCA. ECF No. 42 at 13; ECF No. 64 at 13. The Federal Circuit has emphasized the importance of rapid disposition of patent cases. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). In view of Federal Circuit law and the available time-to-trial statistics, the Court finds this factor weighs at least slightly against transfer.

###   ii.   *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight

---

ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Google argues that the local interest factor favors transfer because the events giving rise to the litigation took place in the NDCA. ECF No. 42 at 13−14. Google points out that most of the Google engineers working on the Accused Products work in the NDCA. *Id.* at 14. Google also argues that this factor favors transfer because the litigation calls into question the work and reputation of individuals residing in the NDCA. *Id.* Further, Google argues that this factor favors transfer because Google is headquartered in the transferee district. *Id.* Google argues that the WDTX does not have a significant interest in the litigation because Google's presence in Austin is not tethered to this lawsuit. *Id.*

Flyp argues that this factor weighs against transfer because this is ultimately a dispute between two companies with significant ties to the State of Texas. ECF No. 64 at 14. Flyp also argues that this District has a local interest in the dispute because Google employees based in the WDTX work on the Accused Products. *Id.* Flyp argues that its proximity to this Court weighs against transfer. *Id.* Flyp acknowledges that the Federal Circuit has found that where a plaintiff resides outside of the transferor district, this factor does not weigh against transfer. *Id.* (citing *In re Apple, Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022)). But Flyp argues that the Federal Circuit has not yet considered whether a plaintiff located within 100 miles of the transferor court weighs against transfer. *Id.*

The Court agrees with Google that its presence in the NDCA weighs in favor of transfer. Google is headquartered in that District and many of the relevant Google employees are located in that District. ECF No. 42-1 ¶ 2; ECF No. 42-2 ¶ 7. Because the Accused Products were largely developed in that district, many of the events that gave rise to the suit likely occurred in the NDCA. However, the Court agrees with Flyp that Google's presence in the WDTX weighs slightly against transfer. Google has a significant presence in this District. Even though the majority of Google's employees are in the NDCA, Google still has over ███████ employees in this District. ECF No. 42-1 ¶ 2. More importantly, a few employees who work on the Accused Products reside in this District: Ms. ████ and Messrs. █████ and ████. Because these employees work in the WDTX, at least some of the events that gave rise to this suit may have occurred in this District.

The Court rejects Flyp's argument that this factor weighs against transfer because Flyp is located within 100 miles of this Court. This case is analogous to *In re Apple, Inc.* There, the Federal Circuit held that the district court erred in concluding that this factor weighed against transfer because the plaintiff company was located in a different district of the same state, only one hundred and twenty miles away from the transferor court. 2022 WL 1676400, at *2. While the Court acknowledges that this determination ignores the proximity between Flyp's offices and this Court, under Federal Circuit law, Flyp's presence near this Court does not create a local interest.

Because most of the events that gave rise to this litigation took place in the NDCA, the Court finds that this factor weighs slightly in favor of transfer. This factor does not weigh strongly in favor of transfer because Google has a significant presence in this District and there are Google employees in this District that work on the Accused Products. Thus, some of the events that gave rise to this litigation may have taken place in this District.

### *iii.*     *Familiarity of the Forum with the Law That will Govern the Case*

Google and Flyp agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 42 at 15; ECF No. 64 at 15. The Court agrees.

### *iv.*     *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Google and Flyp agree that this factor is neutral—there are no potential conflicts here. ECF No. 42 at 15; ECF No. 64 at 15. The Court agrees.

## IV.     CONCLUSION

Having considered the private and public interest factors, the Court finds that four of the factors are neutral, two disfavor transfer to varying degrees, and two slightly favor transfer to the NDCA. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a *clearly* more convenient forum. Here, practical considerations and court congestion weigh against transfer. The compulsory process and local interest factors weigh slightly in favor of transfer to the NDCA. But even with these two factors favoring transfer, the Court finds that Google has failed to meet its burden of showing that the NDCA is a clearly more convenient forum. The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Neutral |
| Cost of attendance for willing witnesses | Neutral |
| Availability of compulsory process to secure the attendance of witnesses | Slightly in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Against transfer |
| Administrative difficulties flowing from court congestion | Slightly against transfer |
| Local interest | Slightly in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Google's Motion to Transfer Venue to the Northern District of California is **DENIED** (ECF No. 42).


**SIGNED** this 21st day of November, 2022.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE