—1—

```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TEXAS
                    WACO DIVISION

FLYPSI, INC.              *
                          *     November 22, 2022
VS.                       *
                          * CIVIL ACTION NO. W-22-cv-31
GOOGLE, LLC               *

         BEFORE THE HONORABLE ALAN D ALBRIGHT
              MARKMAN HEARING (via Zoom)

APPEARANCES:

For the Plaintiff:   Michael A. Bittner, Esq.
                     M. Brett Johnson, Esq.
                     Winston & Strawn LLP
                     2121 N. Pearl Street, Suite 900
                     Dallas, TX 75201

For the Defendant:   Robert W. Unikel, Esq.
                     John A. Cotiguala, Esq.
                     Paul Hastings LLP
                     71 South Wacker Drive, 45th Floor
                     Chicago, IL 60606

                     Elizabeth L. Brann, Esq.
                     Paul Hastings LLP
                     4747 Executive Drive, 12th Floor
                     San Diego, CA 92121

                     Paige Arnette Amstutz, Esq.
                     Scott, Douglass & McConnico, LLP
                     303 Colorado Street, Suite 2400
                     Austin, TX 78701

Court Reporter:      Kristie M. Davis, CRR, RMR
                     PO Box 20994
                     Waco, Texas 76702-0994
                     (254) 340-6114
```

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

2

| | | |
|---|---|---|
| 09:30 | 1 | (Hearing begins.) |
| 09:30 | 2 | DEPUTY CLERK: A civil action in Case |
| 09:30 | 3 | 6:22-CV-31, Flypsi, Inc. versus Google LLC. Case |
| 09:30 | 4 | called for a Markman hearing. |
| 09:30 | 5 | THE COURT: If I could have announcements |
| 09:30 | 6 | from counsel, please. |
| 09:30 | 7 | MR. BITTNER: For Flyp, Michael Bittner |
| 09:31 | 8 | of Winston & Strawn. With me are my associate Marisa |
| 09:31 | 9 | Thompson, also on the line are my partner Brett |
| 09:31 | 10 | Johnson, and for my client Flyp, Peter Rinfret and Tom |
| 09:31 | 11 | Bruderman. |
| 09:31 | 12 | THE COURT: Morning. |
| 09:31 | 13 | For defendant? |
| 09:31 | 14 | MS. AMSTUTZ: Good morning, Judge |
| 09:31 | 15 | Albright. Paige Amstutz with Scott Douglas & McConnico |
| 09:31 | 16 | on behalf of defendant Google LLC. I'm joined by my |
| 09:31 | 17 | colleague from Paul Hastings, Mr. Rob Unikel, along |
| 09:31 | 18 | with our client representative Mishima Alam from |
| 09:31 | 19 | Google. |
| 09:31 | 20 | Mr. Unikel will be addressing the Court |
| 09:31 | 21 | today, and we are ready to proceed. |
| 09:31 | 22 | (Clarification by Reporter.) |
| 09:31 | 23 | THE COURT: Well, this is the last |
| 09:31 | 24 | Markman I will have before Thanksgiving at least, and |
| 09:32 | 25 | it's good to see that I have two challenging terms this |

3

```
09:32   1   morning, "primary telephone number" and "secondary
09:32   2   telephone number."
09:32   3               So it's a good way to wrap up the
09:32   4   holiday -- this holiday season.  I'm happy to hear
09:32   5   Google's arguments as to why these two claim terms are
09:32   6   indefinite.
09:32   7               MR. UNIKEL:  Good morning, Your Honor.
09:32   8   This is Rob Unikel on behalf of Google.
09:32   9               First, can you hear me all right?
09:32  10               THE COURT:  I can.  Yes, sir.
09:32  11               (Clarification by Reporter.)
09:32  12               MR. UNIKEL:  Thank you, Your Honor.
09:32  13               Hopefully we'll give you something to be
09:32  14   thankful about as you go off for your Thanksgiving
09:32  15   break here.
09:32  16               With your permission, may I please share
09:32  17   my screen with some slides?
09:33  18               THE COURT:  Yes.  Of course.
09:33  19               MR. UNIKEL:  Thank you, Your Honor.
09:33  20               Can you see my cover page right now?
09:33  21               THE COURT:  I can.
09:33  22               MR. UNIKEL:  Great.
09:33  23               So, Your Honor, as you've already
09:33  24   mentioned, today we're here to discuss really just two
09:33  25   interdependent claim terms from all of the asserted
```

09:33 1 patent claims. Those terms are "primary telephone
09:33 2 number" and "secondary telephone number."
09:33 3 I am -- I have received the Court's
09:33 4 preliminary instructions indicating its current view
09:33 5 that plain and ordinary meaning should control. And I
09:33 6 certainly am aware that primary and secondary are terms
09:33 7 of common parlance, people use them all the time in
09:33 8 different context in different ways.
09:33 9 I think as we dig a little bit deeper
09:33 10 into how these are used in the claims and in the claim
09:34 11 terms, I believe that what the Court will see, however,
09:34 12 is that those -- it's precisely the ordinary meaning of
09:34 13 those terms in these claims that creates the
09:34 14 indefiniteness problem.
09:34 15 I've started by posting for the Court
09:34 16 the -- a representative claim here, which both parties
09:34 17 have been using in the briefing, for reference. This
09:34 18 is from the '770 patent, Claim 1.
09:34 19 This is claiming a method of providing
09:34 20 telephone service. And what you can see here is I have
09:34 21 highlighted in yellow the various instances where
09:34 22 secondary telephone number is required and primary
09:34 23 telephone number is required.
09:34 24 So you'll see, for example, the first
09:34 25 element requires "associating a secondary telephone

09:34  1   number with a primary telephone number."  There's --
09:34  2   then those terms are repeated throughout the claim.
09:34  3                I have highlighted two other terms here
09:34  4   in blue, which I'll discuss with you also later, "first
09:35  5   digital information" and "second digital information."
09:35  6   And I wanted the Court to be aware of the different use
09:35  7   in the claims of primary and secondary to define the
09:35  8   telephone numbers versus first information or second
09:35  9   information when merely two different items are being
09:35  10  discussed.
09:35  11               So, Your Honor, the issue here becomes
09:35  12  what -- why is it important to construe these terms
09:35  13  now?  Why not just give them their plain and ordinary
09:35  14  meaning, let the case proceed, let the jury figure it
09:35  15  out later?
09:35  16               The difficulty here, Your Honor, as
09:35  17  you've just seen from the claims, the claims require
09:35  18  the presence of at least one primary number and at
09:35  19  least one secondary number.
09:35  20               If all the numbers associated with a
09:36  21  handset are considered primary or all the numbers that
09:36  22  are associated with a handset are considered secondary,
09:36  23  then there would be no claim coverage.
09:36  24               So in the claims then, how does a person
09:36  25  of skill in the art determine whether a number is

6

09:36  1   primary, is secondary, is neither or is both?
09:36  2              And to give you the preview of coming
09:36  3   attractions in the case, for example, if someone
09:36  4   accused of infringing the patent were to say, there are
09:36  5   no secondary numbers on a handset.  There are only
09:36  6   primary numbers, multiple primary numbers.  And the
09:36  7   response was, well, if there are multiple numbers, one
09:36  8   must be primary and the others must be secondary.  The
09:36  9   question is:  Under what criteria can that allegation
09:36  10  be made?  What about the terms "primary telephone
09:36  11  number" and "secondary telephone number" as used in the
09:36  12  patents allow for a determination by somebody trying to
09:37  13  determine whether they're infringing or not that a
09:37  14  number is primary, is secondary or is neither?
09:37  15             So again, in considering the Court's
09:37  16  preliminary construction that the plain and ordinary
09:37  17  meaning should control, there's a few things that we
09:37  18  have to isolate about how those terms are used in the
09:37  19  actual patent claims.
09:37  20             The first is that primary telephone
09:37  21  number and secondary telephone number as used in the
09:37  22  claims are clearly different and distinct from a first
09:37  23  (audio distortion) briefing, their position is
09:37  24  essentially that primary and secondary are just
09:37  25  synonyms for first and second.

```
09:37  1             But we know, as I've just shown you in
09:37  2   the representative claim, that the claims separately
09:37  3   used the adjectives "first" and "second," for example,
09:38  4   when referring to digital information, when they were
09:38  5   not making a distinction based on the primacy, the
09:38  6   importance of particular numbers.
09:38  7             But when it came to the telephone numbers
09:38  8   that are required for the operation of the claims, the
09:38  9   patentee deliberately selected primary and secondary
09:38 10   numbers as the adjectives.
09:38 11             And as we know, when the patentee chooses
09:38 12   different terms to use in the claims, that those
09:38 13   differences need to have some meaning.
09:38 14             Next, the patent makes clear that there
09:38 15   can be multiple secondary numbers.  In fact, I've shown
09:38 16   on this slide just the abstract, and this appears also
09:38 17   in other places in the specification, where it says:
09:38 18   The same handset can be associated with multiple
09:38 19   secondary telephone numbers.
09:38 20             Now, that only makes sense to talk about
09:38 21   multiple secondary numbers if a secondary number is a
09:38 22   type of number.
09:39 23             If it's just a counting off of the
09:39 24   numbers, a first number, second number, third number,
09:39 25   fourth number or -- and the like, then you would not
```

—8—

09:39  1   talk about multiple secondary numbers.  You would just
09:39  2   list the number or numbers that were going to be on a
09:39  3   device.
09:39  4              And then this gets to the real nub of the
09:39  5   problem with the plain and ordinary meaning, Your
09:39  6   Honor, which is that the plain and ordinary meaning of
09:39  7   primary is something main or most important.
09:39  8              The plain and ordinary meaning of
09:39  9   secondary suggests a backup or alternative or something
09:39  10  less important.
09:39  11             Those would be the plain and ordinary
09:39  12  meanings that I think any person of skill in the art
09:39  13  or, frankly, any layperson would understand when you
09:39  14  talk about a primary thing or a secondary thing.
09:39  15             The problem is that these terms are
09:39  16  inherently subjective.  If I were to ask you right now
09:40  17  what is your primary telephone number, you would give
09:40  18  me an answer based on whatever criteria you personally
09:40  19  would use and apply to decide what your primary
09:40  20  telephone number was or a secondary telephone number
09:40  21  was.
09:40  22             You could apply any criteria you want,
09:40  23  logical/illogical, but you would be essentially giving
09:40  24  me your answer based on whatever internal criteria you
09:40  25  would be providing.  That's the problem with how these

```
09:40   1    terms are used in the patent claims.
09:40   2                    One user might regard his business
09:40   3    number, for example, as being a primary number.  The
09:40   4    other might regard his business number as a secondary
09:40   5    number.
09:40   6                    And when you have two phone numbers that
09:40   7    are associated or assigned to a handset, there's no way
09:40   8    to determine in the patent whether either of those is
09:40   9    considered primary and under what terms, whether
09:40  10    neither is considered primary and under what terms or
09:40  11    how the user would even make that determination.
09:41  12                    Importantly, Your Honor, when you look at
09:41  13    those claims, what you'll see is, there's not even a
09:41  14    way to determine whose perspective controls in
09:41  15    determining whether or not a number is primary or
09:41  16    secondary.
09:41  17                    Who's making that determination?  Is it
09:41  18    the user of a device?  Is it the carrier?  Is it
09:41  19    somebody else?  You don't know and there's literally no
09:41  20    guidance in the patent at all about who should
09:41  21    determine whether a number is primary, secondary or
09:41  22    neither.
09:41  23                    So as I've shown here in the gray boxes
09:41  24    on this slide, the way that the terms are used in the
09:41  25    claims right now, a primary telephone number might mean
```

09:41  1   a number regarded by the user as the main number for a
09:41  2   particular purpose.  In other words, it might be
09:41  3   primary for your personal contacts, secondary for your
09:41  4   business contacts.
09:41  5               Might be a number regarded by the user as
09:41  6   the main number during a particular period of time.  So
09:42  7   you might say, well, my business cell number is my
09:42  8   primary number during business hours, but during
09:42  9   nonbusiness hours, I want my personal cell number,
09:42  10  which is associated to the same handset, to be my
09:42  11  primary number.
09:42  12              And it could be, for the same reasons
09:42  13  that I just described, any number that a user regards
09:42  14  as main for any arbitrary reasons.
09:42  15              By the same token, a secondary telephone
09:42  16  number could be one or more numbers, because we know
09:42  17  there could be multiple, that are regarded by the user
09:42  18  as less important for a particular person -- purpose.
09:42  19  Again, for personal contacts, they might regard their
09:42  20  business cell phone number as being secondary, of
09:42  21  secondary importance.
09:42  22              Same thing for a particular time period.
09:42  23  A user might regard a personal cell phone number as
09:42  24  being secondary during business hours but as primary
09:42  25  after 5:00 or 6:00 or 7:00, depending on when they

09:43 1    define the end of their business day.
09:43 2                And it could be regarded as secondary
09:43 3    really for any reason that the -- it just could be
09:43 4    their less preferred number.
09:43 5                The point is that without any criteria in
09:43 6    the patent for what makes a number primary versus what
09:43 7    makes it one of multiple secondary numbers that could
09:43 8    be assigned, it is completely subjective and it depends
09:43 9    on who you ask, what criteria they're applying and
09:43 10   under what conditions they're applying it.
09:43 11               So as I've shown here in the box on the
09:43 12   bottom, you're left with this problem.  A user could
09:43 13   designate all numbers on a handset as primary with no
09:43 14   secondary numbers or a user could designate all numbers
09:43 15   on a device as secondary with no primary numbers.
09:43 16   Perhaps they have a different number that they consider
09:43 17   their primary numbers.
09:43 18               And if that's the case, then there is no
09:43 19   claim coverage because we know that the claims require
09:44 20   a primary number and a secondary number.
09:44 21               And so when we get down the road on this
09:44 22   case and if, you know, Google, for example, says,
09:44 23   they're only primary numbers.  All the numbers are
09:44 24   equal, they're all primary or all secondary.  There's
09:44 25   no differentiation.  And Flypsi were to say, well, one

09:44  1   of them has to be primary, the question will become:
09:44  2   What criteria applies?  What is the construction of
09:44  3   primary that allows somebody to conclude that one
09:44  4   number is primary and one number is secondary?
09:44  5                Now, I will anticipate an easy answer
09:44  6   might have been if the patent had been written
09:44  7   differently and Flypsi's positions had been
09:44  8   differently, that perhaps it's the number that's
09:44  9   assigned to the handset.  The primary number is the one
09:44  10  that gets assigned, and a secondary number is one
09:44  11  that's not assigned.
09:44  12               The problem is that, according to the
09:44  13  patent specification's express teachings, both a
09:45  14  primary number and secondary number can be assigned to
09:45  15  a handset.  Here are just some of the quotes on the
09:45  16  slide from the specification making this clear.
09:45  17               For example, the third bullet point says:
09:45  18  The server may automatically assign one or more
09:45  19  secondary telephone numbers.
09:45  20               THE COURT:  Counsel, counsel, I'm getting
09:45  21  your point.
09:45  22               Let me ask you something.  How did this
09:45  23  get past the examiner?
09:45  24               I mean, they didn't hide this.  It's
09:45  25  everywhere throughout the entire thing and -- every

09:45 1 slide you said.  The examiner couldn't have missed that
09:45 2 they were saying primary and secondary.  How -- was
09:45 3 he -- was he dead?  Was he sleeping?  Did they bribe
09:45 4 him?
09:45 5             I mean, how could an examiner who is
09:45 6 skilled in this technical area read through this and,
09:46 7 if you're right, not just bounce it back and say --
09:46 8 you've -- you've listed to me about 90 grammatical
09:46 9 reasons why you say Google's going to have this
09:46 10 horrible problem.  How did it get issued?
09:46 11             This isn't a tiny little thing in
09:46 12 something like I usually get, where it's, you know, a
09:46 13 node -- I think typically there are grammatical issues
09:46 14 where someone in a claim says, you know, there's a
09:46 15 first node, a second node, a third node, going on and
09:46 16 then says, wherein the node will do X, and you don't
09:46 17 know maybe which node it is.  I get that.
09:46 18             But this is the je ne sais quoi of the
09:46 19 patent.  How did it get out?
09:46 20             MR. UNIKEL:  Your Honor, obviously I
09:46 21 can't get into the mind of the examiner, but what I can
09:46 22 tell you is what I surmise is the case, which is:  In
09:46 23 the same way as if I were to ask you what your primary
09:47 24 number is and you would, I think, have a working
09:47 25 understanding based on your own criteria what was

```
09:47   1    involved, because it is a term that is used with some
09:47   2    regularity, I believe that the examiner was applying
09:47   3    whatever criteria the examiner believed primary and
09:47   4    secondary meant.
09:47   5                And, you know, from a prosecution
09:47   6    standpoint, that may have made sense to the examiner.
09:47   7    The problem is when you then look to the next step,
09:47   8    which is how would people who want to know whether
09:47   9    they're practicing this claim or not practicing this
09:47  10    claim evaluate their position.
09:47  11                THE COURT:  So the prosecutor (audio
09:47  12    distortion)  --
09:47  13                (Clarification by Reporter.)
09:47  14                THE COURT:  But, you know, good luck to
09:47  15    Google because I understand it, but Google, when they
09:47  16    get this and they have engineers and great patent
09:48  17    lawyers like you, they're not going to be able to do
09:48  18    it.  I'm going to let it go anyway.  I'm going to let
09:48  19    it get out where it is said over and over and over.
09:48  20                But, you know, it doesn't make any sense
09:48  21    to me.
09:48  22                MR. UNIKEL:  And, Your Honor, I
09:48  23    understand that.  And obviously we would hope that
09:48  24    these kinds of things are thought about and caught at
09:48  25    the prosecution stage, but as you've seen in many of
```

09:48  1    your own cases, in U.S. Wells, for example, where high
09:48  2    pressure was the term that was included in the claims
09:48  3    during examination --
09:48  4                THE COURT:  No, no, no.  No, no, no.
09:48  5    That's a terrible example.
09:48  6                I mean, that's one -- that's the exact
09:48  7    opposite of this.  That's the exact opposite of this.
09:48  8    This is -- was the entire patent.  This is -- what
09:48  9    they're claiming you're saying is indefinite.
09:48  10               MR. UNIKEL:  Yes, Your Honor.  I am
09:48  11   saying that, because whether it was correctly
09:48  12   interpreted by the examiner or foreseen by the
09:49  13   examiner, the problem that we're left with with the
09:49  14   terms that are actually in the issued claims are that
09:49  15   there is no criteria to determine whether or not
09:49  16   numbers are primary or secondary.
09:49  17               Whether that was an unfortunate after
09:49  18   effect of the examiner's own understanding or belief
09:49  19   about what primary or secondary meant, the reality is
09:49  20   that we now have claims that do persistently use these
09:49  21   terms.  But once again, we are left with the problem
09:49  22   that we don't know whose perspective these are judged
09:49  23   by, what criteria are used to determine primary versus
09:49  24   secondary and how any person could determine whether or
09:49  25   not they're infringing or not infringing with

```
09:49    1    reasonable certainty.
09:49    2                 And that is the entire reason why,
09:49    3    unfortunately, there are some claims that make it
09:49    4    through the Patent Office and the patent process and
09:49    5    still are indefinite and still include terms that just,
09:50    6    for whatever reason, the indefiniteness was not
09:50    7    appreciated during the focus of the examination, but it
09:50    8    is appreciated once you look in the context of
09:50    9    litigation and how this might or might not be applied
09:50   10    by people of skill in the art.
09:50   11                 I don't know if that answers your
09:50   12    question, Your Honor.
09:50   13                 THE COURT:  No.  It's probably as good as
09:50   14    you're going to do.
09:50   15                 Is there anything else that you wanted to
09:50   16    add?
09:50   17                 MR. UNIKEL:  Your Honor, nothing in
09:50   18    particular, other than I would like to say that one
09:50   19    point that has been made by the briefing by Flypsi is
09:50   20    that this one term was construed in the Dialpad case,
09:50   21    and that's primary telephone number.
09:50   22                 I just wanted to point out, as Your Honor
09:50   23    will recall, indefiniteness was not raised there nor
09:50   24    was the interaction between primary telephone number or
09:50   25    secondary telephone number, which is the problem that
```

| | | |
|---|---|---|
| 09:50 | 1 | gives rise to the indefiniteness.  What makes one |
| 09:50 | 2 | primary versus what makes one secondary? |
| 09:50 | 3 | In Dialpad, the one thing that we know |
| 09:51 | 4 | for certain is that Flypsi opposed a construction of |
| 09:51 | 5 | primary telephone number that would have made it the |
| 09:51 | 6 | number assigned to the handset at the time of |
| 09:51 | 7 | activation. |
| 09:51 | 8 | In fact, I've put on the slide that's in |
| 09:51 | 9 | front of Your Honor an excerpt from Flyp's briefing |
| 09:51 | 10 | where they opposed the restriction of a primary number |
| 09:51 | 11 | to the number assigned at the time of activation.  And, |
| 09:51 | 12 | in fact, the specification makes clear that both |
| 09:51 | 13 | numbers, a primary and a secondary number, can be |
| 09:51 | 14 | assigned to the handset. |
| 09:51 | 15 | So the only thing we know from the |
| 09:51 | 16 | Dialpad instance is that there is no concrete |
| 09:51 | 17 | restriction on what a primary telephone number can be, |
| 09:51 | 18 | and Flyp has opposed any such restriction on that. |
| 09:51 | 19 | So now when we're trying to determine, |
| 09:51 | 20 | well, what if they're all primary numbers?  What if |
| 09:51 | 21 | they're all secondary numbers and who and how is that |
| 09:51 | 22 | determination made?  We do not have any actual |
| 09:51 | 23 | criteria, including from Flyp, in order to make that |
| 09:52 | 24 | determination. |
| 09:52 | 25 | That's my final point, Your Honor. |

18

```
09:52   1                       THE COURT:  Thank you.  I'll be back in a
09:52   2    second.
09:52   3                       (Pause in proceedings.)
09:52   4                       THE COURT:  Okay.  If we can go back on
09:52   5    the record.
09:52   6                       The Court's going to maintain its
09:52   7    constructions of plain and ordinary meaning on both
09:52   8    claim terms.
09:52   9                       Those are the only two claim terms I
09:52  10    think we had.
09:52  11                       I hope that you all -- Counsel, what
09:52  12    office are you in?  What geographical?
09:52  13                       MR. UNIKEL:  I'm in the Chicago office,
09:52  14    Your Honor.
09:52  15                       THE COURT:  What's the weather like these
09:52  16    days?
09:52  17                       MR. UNIKEL:  Actually, today it's
09:52  18    brilliant.  Today it's 50 degrees and sunny, which is
09:52  19    very unusual considering that it was a 10-degree
09:52  20    windchill two days ago.  I'm thrilled with 50 degrees.
09:53  21                       THE COURT:  I can only imagine if you
09:53  22    live in Chicago, these are -- well, I'll tell you what,
09:53  23    so we'll quit early and you can go out and enjoy this
09:53  24    beautiful weather in Chicago, which is so rare in
09:53  25    November.
```

```
09:53   1                I hope you guys have a wonderful
09:53   2   Thanksgiving, and I hope to see at least some of you in
09:53   3   person soon.  Take care.
09:53   4                   (Hearing adjourned.)
```

```
                                                                      20
 1   UNITED STATES DISTRICT COURT  )

 2   WESTERN DISTRICT OF TEXAS     )

 3

 4

 5              I, Kristie M. Davis, Official Court

 6   Reporter for the United States District Court, Western

 7   District of Texas, do certify that the foregoing is a

 8   correct transcript from the record of proceedings in

 9   the above-entitled matter.

10              I certify that the transcript fees and

11   format comply with those prescribed by the Court and

12   Judicial Conference of the United States.

13              Certified to by me this 1st day of

14   December 2022.

15
                              /s/ Kristie M. Davis
16                            KRISTIE M. DAVIS
                              Official Court Reporter
17                            800 Franklin Avenue
                              Waco, Texas 76701
18                            (254) 340-6114
                              kmdaviscsr@yahoo.com
19

20

21

22

23

24

25
```